IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN K. MacLELLAN, | No. 2:21-CV-0234-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 7 and 10, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 13 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 18 and 21.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

**I.  THE DISABILITY EVALUATION PROCESS**

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 1, 2019.  See CAR 19.[1] In the application, Plaintiff claims disability began on June 1, 2016.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on October 8, 2020, before Administrative Law Judge (ALJ) E. Alis.  In an October 29, 2020 decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. Through the date last insured – March 31, 2020 – the claimant had the following severe impairment(s): status post right rotator cuff tear and debridement, degenerative disc disease of the cervical spine, fibromyalgia, obesity, bilateral carpal tunnel syndrome, depressive disorder;

2. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

3. Through the date last insured, the claimant had the following residual functional capacity: light work, she can lift or carry 20 pounds occasionally and 10 pounds frequently, she can sit, stand, or walk each for 6 hours in an 8-hour workday, she can push or pull as much as she can lift or carry, she can frequently handle and finger bilaterally, she could occasionally interact with supervisors, coworkers, and the public, she would need to work in a low-stress environment, meaning that there would be few, if any, changes in the day-to-day work settings, or in the tools and work process used to accomplish work;

4. Considering the claimant's age, education, work experience, and residual functional capacity, and vocational expert testimony, through the date last insured, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

See id. at 22-31.

After the Appeals Council declined review on December 10, 2020, this appeal followed.

///

///

///

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on April 1, 2022, ECF No. 15.

## III.  DISCUSSION

Plaintiff raises three arguments, each associated with a different physical impairment/limitation.  In the opening brief, Plaintiff argues:

| | |
|---|---|
| Right Shoulder Limitations | As to Plaintiff's right shoulder injury, the ALJ failed to recognize this impairment as a continuous disability lasting greater than 12 months and subsequently failed to assess residual functional capacity in light of Plaintiff's right shoulder impairment during that time period. |
| Dexterity Limitations | As to Plaintiff's carpal tunnel syndrome, the ALJ failed to consider the consistency and supportability of the medical opinions, and failed to rely on substantial evidence while assessing residual functional capacity in light of Plaintiff's carpal tunnel syndrome and limitations on dexterity. |
| Sit/Stand Limitations | As to stand/walk limitations, the ALJ's residual functional capacity determination is flawed due to improper analysis of the medical opinions. |

All of Plaintiff's arguments allege errors in the ALJ's residual functional capacity determination at Step 4.[2]  Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record.  See SSR 85-15.  In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

/ / /

/ / /

---

[2]  While Plaintiff contends that the ALJ's vocational findings at Step 5 are flawed due to failure to include stand/walk limitation in hypothetical questions posed to the vocational expert, the gravamen of Plaintiff's argument is that the ALJ failed at Step 4 to properly evaluate the medical opinion evidence relating to stand/walk limitations in assessing Plaintiff's residual functional capacity.

A. **<u>Right Shoulder Limitations</u>**

As to Plaintiff's right shoulder impairment, the ALJ stated as follows at Step 4:

> . . .With regard to the claimant's right rotator cuff tear, the record shows that she first reported right shoulder pain in April 2019, almost three years after the alleged disability onset date. Exhibit 12F/4. At that time, the claimant reported that she had not yet tried conservative measures for her pain symptoms, and declined a referral for physical therapy. *Id.*/7 (also showing normal muscle tone without atrophy). The claimant received a prescription for Ibuprofen along with a recommendation for conservative therapies such as cold packs, NSAIDS, and maintaining range of motion. *Id*. During the consultative examination a month later in May 2019, the claimant demonstrated good range of motion in both shoulders and the cervical spine region, as well as an unremarkable examination of the elbows, wrists, and hands. Exhibit 11F/3. In addition, the examiner reported normal strength, muscle bulk, and tone and intact sensation throughout the extremities. *Id.* The examiner did not assess reaching or other manipulative restrictions. *Id.*/4.
>
> The claimant sought treatment again for right shoulder pain in August 2019, at which a physical examination showed decreased strength with extension against resistance, and increased pain with abduction and resistance. Exhibit 14F/8, 10. Her provider then ordered imaging studies. While a September 2019 X-ray of the right shoulder showed unremarkable findings in the AC and glenohumeral joints, a November 2019 MRI showed a full-thickness rotator cuff tear. Exhibit 15F/20, 24.
>
> However, the record demonstrates that the claimant underwent surgery in March 2020 to repair the tear, after which she attended physical therapy. Exhibit 15F/25; *see generally id.* The claimant's physical therapy records indicate that her condition significantly improved with the surgery and subsequent 12 sessions of therapy. At the time the claimant was discharged from physical therapy in June 2020, she had met status goals, and demonstrated right shoulder range of motion within functional limits, decreased tenderness throughout the rotator cuff and shoulder girdle musculature, and 4+/5 strength throughout planes of movement. *Id.*/25 (also noting minimal symptom distress, and no specific apprehension with reaching away from midline and overhead).
>
> In sum, the evidence does not demonstrate right shoulder pain complaints before April 2019, and does not show positive clinical findings supportive of limitation prior to August 2019. Exhibits 11F/3; 12F/7; 14F/10. The evidence after August 2019 indicates that the claimant underwent an uncomplicated surgical repair of the rotator cuff tear, and successfully recovered her functioning as of June 2020. Exhibit 15F.

CAR 28.

/ / /

/ / /

/ / /

Plaintiff contends she developed right shoulder pain in April 2019 and received medical treatment of the right shoulder through June 2020. See ECF No. 18, pg. 5. The gravamen of Plaintiff's argument is that the time period from April 2019 to June 2020 constitutes a continuous disability period of not less than 12 months and, therefore, the ALJ erred by failing to complete a residual functional capacity analysis of the right shoulder. See id. at 6. According to Plaintiff:

> The ALJ did not address [Plaintiff's] residual functional capacity during the period of April 2019 to June 2020. That failure constitutes error.
>
> Id.

For purposes of social security disability insurance benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for SSI); Beltran v. Astrue, 700 F.3d 386, 388-89 (9th Cir. 2012) (reversing district court's grant of summary judgment to Commissioner concluding that the availability of jobs in the region that claimant could do did not constitute a significant number of jobs); Ludwig v. Astrue, 681 F.3d 1047, 1048 n.1 (9th Cir. 2012) (affirming denial of application for disability insurance benefits); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (considering whether claimant established the existence of a medically determinable impairment).

According to Plaintiff: "The period April 2019 to June 2020 qualifies for a period of disability." Id. Defendant does not dispute that the period from August 2019 to June 2020 constituted a period of disability, however, Defendant takes issue with Plaintiff's allegation that the disability period began in April 2019. ECF No. 21, pgs. 4-5. Accordingly, Defendant asserts that the time period from August 2019 to June 2020 does not satisfy the continuous 12-month time period required to received social security disability insurance benefits. Id. pg. 8.

/ / /

/ / /

Plaintiff's argument is unpersuasive. While Plaintiff identifies that she sought medical advice for her right shoulder pain in April 2019, Plaintiff concedes "Dr. Ali did not diagnose a shoulder impairment, finding only a history of fibromyalgia." ECF No. 18, pg. 5. The ALJ was accurate in concluding the evidence did not demonstrate Plaintiff's right should injury constituted a continuous disability satisfying the continuous 12-month disability period required to receive social security disability benefits. In making their decision, the ALJ reviewed evidence that Plaintiff's right shoulder injury was not diagnosed until August 2019. See CAR 28.

While Plaintiff contends the ALJ was mistaken by reporting Plaintiff had "good" range of motion in the right shoulder during the May 2019 medical appointment, the Court finds the ALJ's conclusion is supported by substantial evidence as the ALJ relied on Dr. Ali's report, an examining physician. ECF No. 18, pg. 5; CAR 507-09; see CAR 28-30. Because the ALJ's conclusions are supported by substantial evidence, the Court is not persuaded by Plaintiff's contentions. Thus, Plaintiff's right shoulder pain did not constitute a disability as the statutory continuous 12-month disability period is unsatisfied.

In any event, the Court finds the ALJ properly evaluated Plaintiff's right shoulder impairment assuming it did meet the 12-month duration requirement. Plaintiff states: "The ALJ did not address [Plaintiff's] residual functional capacity during the period of April 2019 to June 2020. That failure constitutes error." ECF No. 18, pg. 6. The Court finds Plaintiff's argument unpersuasive.

First, the ALJ relied on Dr. Ali's medical opinion which stated:

> At the time of the examination, the claimant demonstrated good ranges of motion per Dr. Ali's report, as well as the ability to squat, a normal gait, and no tenderness noted in the back or knees. *Id.*/3. The claimant's treatment records likewise show no evidence of low back impairment, minimal treatment for knee pain, and improved functioning in the neck and upper extremities with treatment.
>
> CAR 30.

///

///

///

Further, the ALJ relied on opinions from the state agency medical consultants, Drs. Allen and Rosenstock. The ALJ concluded: "I find the opinions of the state agency medical consultants generally persuasive insofar as they also found the claimant capable of light exertion. Exhibits 2A; 4A." Id.

Thus, and assuming Plaintiff's right shoulder impairment met the 12-month duration requirement, the ALJ did in fact account for this impairment in assessing Plaintiff's residual functional capacity, finding Plaintiff had a limited ability to "lift or carry 20 pounds occasionally and 10 pounds frequently." CAR 24. In making this finding, the ALJ relied on Dr. Ali's medical opinion that Plaintiff's upper extremities improved with treatment and in concluding Plaintiff demonstrated a good range of motion. The ALJ also relied on the opinions of Drs. Allen and Rosenstock in concluding Plaintiff was able to perform light exertion. The Court agrees with Defendant that the ALJ relied on substantial evidence "[b]ecause these three physicians reviewed Plaintiff's medical records and cited evidence in support of their conclusions." ECF No. 21, pg. 7. Therefore, the Court finds the ALJ did not err in evaluating the medical opinions with respect to Plaintiff's right shoulder impairment.

### B.    Carpel Tunnel Syndrome and Dexterity Limitations

Addressing both degenerative changes of the cervical spine as well as carpel tunnel syndrome, the ALJ provided the following discussion of the objective medical evidence at Step 4:

> The remaining record is largely comprised of treatment for left (non-dominant) upper extremity symptoms associated with degenerative changes in the cervical spine and carpal tunnel syndrome. While imaging studies of the cervical spine show disc degeneration and spurring, they do not show evidence of nerve root involvement. Exhibits 3F/6-7; 16F/11. Viewing the evidence in the light most favorable to the claimant, I find that the evidence is sufficient to support a limitation to light exertion with frequent bilateral fingering and handling.
>
> However, the record does not fully support the alleged severity of the claimant's symptoms. The record demonstrates that the claimant had EMG/NCV studies in May 2017 and again in September 2019. Exhibits 9F/10; 14F/14. The 2017 studies showed mild bilateral median neuropathies consistent with carpal tunnel syndrome, as well as findings suggestive of but not clearly diagnostic for left C8 radiculopathy. Exhibit 9F/10. At the time of the May 2017 studies, the claimant had reported left

hand numbness, weakness, and tingling for 3 months. *Id.*/9, 13. The September 2019 studies, which tested only the left upper extremity, more clearly indicated a left C8 radiculopathy, but with only mild chronic denervation changes. Exhibit 14F/14. In addition, the studies continued to show only mild left median neuropathy at the wrist consistent with carpal tunnel syndrome. *Id.* In other words, electrodiagnostic studies do not show significant worsening of the mild left upper extremity median neuropathy from 2017 to 2019, or more than mild left C8 radiculopathy. Exhibits 9F/10; 14F/14.

Imaging studies of the hands also show no evidence of lesion or arthritis. Exhibit 16F/3, 20. Clinical findings in the left upper extremity are also varied and relatively sparse. In February 2017, for example, the claimant sought urgent care for left trapezius pain and arm numbness, but apart from tenderness and muscle spasm in the trapezius, a physical examination was unremarkable, showing negative Hawkins, empty can, and drop arm signs on the left. Exhibit 13F/5. The claimant demonstrated no tenderness over the left AC joint, clavicle, or proximal humerus. *Id.* A March 2018 examination showed a positive Tinel's test of the medial left elbow, but negative Tinel's tests in both wrists. Exhibit 5F/7. In November 2018 and May 2019, the claimant reported numbness in the 4$_{th}$ and 5$_{th}$ digits of the left hand; however, examinations not only showed negative Tinel's tests in both wrists, but also in the left elbow. Exhibits 5F/2; 17F/8.

CAR 26-27.

At Step 4 of the sequential evaluation, the ALJ also considered the medical opinions of record. See CAR 29-30. Regarding physical limitations, the ALJ discussed opinions provided by: (1) consultative examining physician, Dr. Shahid Ali; (2) state agency medical consultant, Dr. J. Allen; and (3) state agency medical consultant, Dr. Robin Rosenstock. See id. The ALJ found Dr. Ali's opinion "generally persuasive." Id. The ALJ found the opinions of Drs. Allen and Rosenstock "generally persuasive." Id. None of the three opined that Plaintiff had manipulative limitations relating to carpel tunnel syndrome.

As to Drs. Ali, Allen, and Rosenstock, the ALJ stated:

In assessing the claimant's residual functional capacity, I find the opinion of Dr. Ali, the consultative examiner, generally persuasive. Exhibit 11F. Dr. Ali concluded that the claimant is capable of light work with frequent climbing, balancing, stooping, kneeling, crouching, and crawling. He did not find any limitation in sitting, standing, or walking or with regard to manipulative activities. In this case, however, I find that the weight of the evidence supports the additional manipulative restrictions identified above and discussed at length in the body of this decision. By contrast, I do not find support for the postural limitations assessed by Dr. Ali. At the time of the examination, the claimant demonstrated good ranges of motion per Dr. Ali's report, as well as the ability to squat, a normal gait, and no tenderness noted in the back or knees. *Id.*/3. The claimant's treatment records likewise show no evidence of low back impairment, minimal

>treatment for knee pain, and improved functioning in the neck and upper extremities with treatment. While the postural limitations assessed during the consultative examination do not conflict with the disposition of this case, I nonetheless find that the evidence before me does not support them.
>
>* * *
>
>I find the opinions of the state agency medical consultants generally persuasive insofar as they also found the claimant capable of light exertion. Exhibits 2A; 4A. Their opinions, which do not include postural limitations, are consistent with the claimant's residual functional capacity assessment. However, for the reasons discussed above, I find that the weight of the evidence, including updated EMG/NCV studies submitted after the reconsideration determination, supports limitation to frequent handling and fingering bilaterally.

CAR 29-30.

Plaintiff contends: "The ALJ did not assess the consistency and supportability of the medical evidence as to the presence of carpal tunnel syndrome in assessing the frequency of manipulation or the unaddressed issue of dexterity." ECF No. 18, pg. 9.

Plaintiff's argument that the ALJ failed to address limitations associated with carpel tunnel syndrome is not persuasive. As the record outlined above reflects, the ALJ considered the objective evidence regarding manipulative limitations, as well as the opinion evidence from Drs. Ali, Allen, and Rosenstock who all opined that Plaintiff had no manipulative limitations. Nonetheless, the ALJ limited Plaintiff to only frequent manipulative activities, thereby accounting for some restriction to the extent Plaintiff was not found to be able to constantly engage in such activities.

Here, the Court finds the ALJ properly assessed the consultants' opinions against the other evidence in concluding Plaintiff was capable of light exertion. Additionally, where a discrepancy existed with the updated EMG/NCV studies and the consultants' opinion, the ALJ resolved the conflict in Plaintiff's favor. Even though the ALJ resolved the EMG/NCV studies conflict in Plaintiff's favor by finding a limitation, the ALJ did not conclude Plaintiff's carpal tunnel syndrome constituted a disability. Id.

/ / /

/ / /

/ / /

The ALJ's determination that a disability did not exist was based on Dr. Ali's medical opinion. In considering Dr. Ali's opinion the ALJ stated: "The claimant's treatment records likewise show no evidence of low back impairment, minimal treatment for knee pain, and improved functioning in the neck and upper extremities with treatment." Id. Because Dr. Ali was an examining physician, Dr. Ali's medical opinion constitutes substantial evidence because Dr. Ali performed his own independent examination of Plaintiff. See Tonapetyan, 242 F.3d 1144, 1149. Therefore, the ALJ's reliance on Dr. Ali's examination and findings that Plaintiff's carpal tunnel syndrome improved with treatment constitutes substantial evidence.

### C. Stand/Walk Limitations

Plaintiff argues that the ALJ's vocational findings at Step 5 are unsupported by substantial evidence because they are based on answers to hypothetical questions posed to the vocational expert which did not account for stand/walk limitations. See CAR 18, pgs. 10-12. In making this argument, Plaintiff asserts that the ALJ erred by failing to provide any reasons for rejecting stand/walk limitations opened by Dr. Rosenstock. See id. According to Plaintiff, the ALJ erred by not addressing Dr. Rosenstock's opinion that Plaintiff could stand/walk for six hours in the aggregate. See id.

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute

substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other

factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 5, the ALJ concluded Plaintiff could perform light work and noted Plaintiff "can sit, stand, or walk each for 6 hours in an 8-hour workday." CAR 24.  The ALJ, however, also concluded that Plaintiff's ability to engage in the full range of light work is eroded by additional limitations.  See id.  The ALJ examined a vocational expert to determine the extent to which additional limitations impact the occupational base.  See id. pg. 30-31.  Based on a hypothetical question presuming someone with the residual functional capacity described by the ALJ, as well as Plaintiff's past work experience, education, and age, the vocational expert identified various jobs which exist in the national economy the hypothetical claimant can perform.  See id. pg. 31-32.  Accepting this testimony, the ALJ concluded Plaintiff is not disabled. Id.

///

Plaintiff contends that the ALJ's vocational findings at Step 5 are flawed because the ALJ relied on answers to hypothetical questions that did not accurately describe Plaintiff's residual functional capacity. See ECF No. 18, pg. 11. In challenging the ALJ's analysis of the medical opinion evidence, Plaintiff argues more specifically that the ALJ's vocational findings are inconsistent with Dr. Rosenstock's opinions. See id. According to Plaintiff, Dr. Rosenstock's conclusion, that Plaintiff had an aggregate limit to standing and/or walking for about six hours in an eight-hour workday "requires more standing and/or walking than a limit to six hours in the aggregate for both activities." Id. pgs. 10-12. Defendant asserts that "Plaintiff's argument to its logical conclusion would assume that the RFC assessed she could work for 12 hours in a single workday – i.e., she could perform work while standing for six hours, followed by work involving walking for six hours." ECF No. 21, pg. 16.

The Court agrees with Defendant. Dr. Rosenstock limited Plaintiff to no more than six hours of standing or walking in an eight-hour workday, and no more than six hours of siting in an eight-hour workday. CAR 91-92. While Dr. Rosenstock's evaluation states: "Stand and/or walk: (with normal breaks)," it appears clear that Dr. Rosenstock's assessment of no more than six hours in an eight-hour workday means Plaintiff is limited to only six hours of a combination of standing and walking. See id. Thus, the ALJ's assessment that Plaintiff "can sit, stand, or walk each for 6 hours in an 8-hour workday" does not reject Dr. Rosenstock's assessment nor does it present the residual functional capacity to the vocational expert differently than as assessed by Dr. Rosenstock. CAR 24.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 18, is denied;
2. Defendant's motion for summary judgment, ECF No. 21, is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 28, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE